McFaeRAND, J.
delivered the opinion of the court.
These are two of a large number of motions made by the Attorney General .in the chancery court at Memphis against A. Alston, former clerk and master, and his sureties, under Code, sec. 3228, to recover the amount of fees charged and collected by said Alston for enrolling causes finally determined in the court, when the enrollment was not made.
After the motions were made, the Legislature passed an act allowing clerks (including those who had gone out of office) twelve months time to enroll cases, and suspending for that time all motions pending under sec. 3228, with a proviso that such proceedings might, upon the defendants’ motion, at any time, be dismissed at their costs. Act approved Dec. 15, 1871.
The defendants relied upon this act.
Two of these cases were here at a former term. The questions then were, whether the motions had been entered, and were pending, at the time the act referred to was passed; and whether they were properly made in the name of the county trustee.
These questions were decided in th; ffirmative; and it was held that under the act the cases must await the expiration of the twelve months unless the defendant ■ elected to have them dismissed at his cost.'
The motions were not so dismissed. At the expiration of twelve months it appeared that the defend *585 ant bad caused a large number of the cases to be enrolled, and that in those not enrolled the records had been lost. Upon ^ this, the Attorney General asked for judgments for costs in those cases where the enrolling had been done, and for fees and costs in those cases where it had not been done.
Two cases were selected as test cases, one representing each class, both being decided below in favor of the defendants, the motions .being dismissed and the costs taxed to the County of Shelby.
The Attorney General has appealed in behalf of the county.
The ground first assumed in support of the action of the Chancellor is, that these motions, at the time they were made, were barred by the statute of limitations.
This depends upon whether the time of limitation is one year.
In an 'article of the Code fixing the time within which civil actions shall be brought, it is enacted (see. 2772): — “Actions for libel, for injuries to the person, false imprisonment, criminal conversation, seduction, breach - of marriage promise, and statute, penalties, shall be brought within one year after the cause of action accrued.”
Is this a “statute penalty?”
It is upon this proposition that the argument for the defense is made.
A statute penalty may be defined as a penalty fixed by statute as a punishment for the violation of some provision of law. Bouvier’s Law Diet.
*586 As instances, we refer to the various clauses of our Code under the head of penalties. The penalties are recovered by a proceeding in the nature of a civil action, and differ in this from criminal prosecutions.
It is first argued, that as see. 3228, under which the motion is made, characterizes the conduct of the' clerk charging fees for cases not enrolled as “official delinquency,” and uses the. language “guilty” of official delinquency, this shows that the sum to be recovered is a penalty.
We suppose that the failure of the clerk to enroll within the time specified cases which by the law' he is required to enroll, is “official delinquency,” beyond all doubt; but it does not follow that to require him after such delinquency to pay back the fees collected for the enrollment he failed to make, is a penalty or punishment for such delinquency.
The words “guilty” or “not guilty” are correctly applied to the defendants in actions of trespass, and various other actions • where no criminality is attached to their acts. And “official delinquency,” while it is often the ground for criminal or penal infliction, is at the same time as often the ground for civil proceedings of a purely remedial character.
The failure of a sheriff to pay over money collected under process is certainly “ official delinquency; ” yet the remedy given by motion to compel the payment, cannot be regarded as a punishment, nor the money recovered as a penalty, except to the extent of the 12J per cent damages in cases where this 'is allowed.
*587 It is certainly clear that the fees collected for enrollments not made within the time do not, in law or in justice, belong to the clerk.
It is money for which he has not rendered even the shadow- of consideration.
To compel him to pay this money over to the party rightfully entitled to it, is no punishment or penalty inflicted upon him. It is simply requiring him to do justice, — to pay back the money that does not belong to him.
Secs. 4816 and 4065 of the Code, in substance, make the wilful neglect of a clerk to perform any duty a misdemeanor, except where some other provision or penalty is specially provided, and it is argued that the motion given by sec. 3228 is a special provision for the punishment of clerks failing to make the enrollment, and would prevent a prosecution for a misdemeanor under secs. 4065 and 4816.
If so, the clerk, after collecting the fees and failing for six months to enroll the case, thereby becoming guilty of official delinquency, as the argument concedes, may satisfy the demands of the law by merely paying the fees over to the county trustee,— simply returning the money to which he has no right.
Could - an officer guilty of extortion save himself from criminal prosecution by merely returning the money unlawfully extorted? Assuredly not.
It will be observed that these motions are only to recover the amount of the enrollment fees, not for any damages by way of penalty.
True, the costs of the motions, if adjudged against *588 the defendant, will, in one sense, be a severe punishment; but the payment of costs by a defendant upon, the recovery of a civil demand against him, is not in legal contemplation a penalty or a . punishment. He can avoid this by paying the demand before the motion is made.
It is argued that the act of Dec. 15, 1871, under which these motions were suspended, denominates the motions “ penalties.”
This sort of legislative construction we do not regard as of much weight.
It is next argued, that the fact that the law requires the services of the Attorney General is important as showing the proceeding to have been intended as a punishment of the defendant.
~We reply, that the services of the Attorney General are required in many cases for the recovery of public revenue, and in other cases where the proceeding is of a civil and remedial nature.
Nor does the fact that the money is not to be paid' to the party from whom it was collected, or to any other private person, determine the nature of the proceeding to be as argued.
The fee was properly collected; but the failure of the defendant to render the service terminated his right to it. It goes to the county trustee, to furnish, in legal contemplation, the means to have the enrollment made hereafter.
"We conclude that while the failure of the clerk to enroll the case was official delinquency, subjecting him to punishment, this proceeding is not for the purpose *589 of punishing him, but simply to recover the money in his hands which, by his failure to perform the service, belongs not to him, but to the county trustee for public purposes, — so that this proceeding is not to recover a statute penalty.
We do not deem it important to inquire whether these cases fall within the limitations of the general or special provisions of secs. 2775 or 2776; for the time to create the bar under either of these sections has not elapsed.
The action of the Chancellor is maintained to be correct upon another ground, — that the act of December 15, 1871, is a legislative pardon of the offense.
The defendant relies upon this supposed pardon to wipe out all guilt and leave him as if he had never offended; and he claims as a consequence that he is not liable for the costs of the prosecution.
But we have already held that this is not a criminal or penal action. If it were, then the question of a pardon might be material; but as it not, it is unnecessary to determine whether the defendant has been pardoned for the offense.
In this aspect, it would be important to inquire whether the Legislature possesses the pardoning power.
But as we have held this to be a civil proceeding, to recover a sum of money alleged to have accrued to the plaintiff upon the facts stated, the rules applicable to such civil proceedings must apply.
The defendant alleges that, under. the provisions of the act of December 15, 1871, he has satisfied the demand of the plaintiff in some of these cases by per *590 forming the services, thereby entitling himself to retain the fees: — that is, he has paid the demand since the motion was made, not in money, but in the mode allowed by the act.
Then it should seem that the rule applicable where the demand is paid after action brought must obtain here: — that is, the defendant having confessed his liability, by the payment of the debt after action brought, is liable to a judgment for costs.
This was decided in the case of the State v. Dail, 3 Heis., 272, where a delinquent revenue officer paid over the money between the date of the service of the notice upon him and the entry of the motion: he was held liable for the costs.
It is argued that the Legislature may release a debt or penalty due the State, and that they may release the recovery sought in this case.
Concede this: the question is, have they done so?
Ve think that the only effect of the act of December 15, 1871, as applicable to these motions, then pending, was to suspend the prosecution of the motions for twelve months, with leave to the defendant to enroll the oases within that tinie: if he did so, this was to have the effect of satisfying the plaintiff's demand to recover fees in cases where the enrolling was done; but if there was no.further provision, this, upon the principles we have stated, left him liable for the costs accrued.
The act provides that the motions shall be dismissed at the cost of the defendants, upon this motion. Upon this we hold that unless the defendants *591 made this motion the cases would have to await the expiration of the twelve months. There is certainly nothing in this to show that the Legislature intended to release the defendants from costs. The contrary seems manifest.
In the other cases, where the enrollment has not been made, the argument is very ingenious, — that after the passage of the act of December 15, 1871, it' became simply a question whether the defendant had complied with the act or given a good reason for his failure, and that the loss of the records is a good reason, as it made it impossible to comply with the statute.
The defendant was liable for the recovery at the time the motions were made. The accidental loss of the records, by which he has been prevented from performing the service, and thus discharging the demand, is in one sense a misfortune to him, but it cannot relieve him from a liability already attached.
Not having performed the service, and the time allowed him to perform it having expired, he certainly has no claim to the fees. If the record be found and hereafter enrolled, this must be done by some one else, and the fee for the service should be in the hands of the county trustee, under the law.
It is next argued that the law did not require these cases to be enrolled, and that the motions do not fall within the provisions of Code, see. 3228, but that the exaction of the fees was simply extortion.
The law requires chancery cases to be enrolled *592 whenever, in the opinion of the Chancellor finally determining the case, it is necessary, and he so orders. Code, sec. 3227.
The objection is, that the Chancellor did not make such an order in this case, but only made a general order covering .all the cases decided at the term.
This custom, as we believe, has prevailed to so general an extent that we should certainly hesitate to declare the order void even if we entertained doubts as to its propriety; but we see no reasonable objection to it.
We do not think that we ought to be governed in this by the rule that statutes upon summary proceedings are to be strictly construed, simply because the question arises in a summary proceeding.
But, finally, sec. 3228, under which this motion is made, directs the Attorney General to proceed against the clerks guilty of official delinquency in this particular. He is not directed to proceed upon the clerks’ bonds, nor is he directed to proceed against their sureties, although the act of 1851-2, from which the above section was taken, expressly provides that the motions shall be made against the sureties as well as the principal.. This point, however, seems to have been omitted or overlooked in carrying the provision into the Code.
Sec. 3584, among the general provisions in the beginning of the Chapter on Summary Proceedings, enacts that whenever, by this chapter, a motion is given ■against an officer, it carries with it the right to move against him and the sureties on his official bond. But *593 sec. 3228 is not only in a different chapter, but under a different title in the Code.
It would seem that this was a liability covered by the terms of the bond, and that the omission in sec. 3228 was an oversight; but on this question the rule that summary proceedings must be strictly _ pursued must .apply.'
The remedy, in derogation of the common law, is given by statute, and in determining its extent the statute must be strictly pursued.
The judgments therefore will be affirmed as to the sureties, but reversed as to the defendant, and judgment given for the plaintiff for costs in one ease, and for fees and costs in the other.
The remedy against the defendant alone is expressly given, and although the motion was made on the bond, and the bond was given in evidence, yet it does not defeat the motion that the plaintiffs superflously averred and proved the bond.
A petition for a rehearing having been presented, on a subsequent day of the term Nicholson, C. J., delivered the following opinion, denying the application:
The application for a rehearing suggests two grounds;
1. Because in the opinion of the court, as delivered, the principles of law which govern the distinction between remedial and penal statutes were not fully considered, and upon a proper application of these the statute in question must be held to be penal, and not remedial.
*594 The case was considered by the- court in view of the distinction between remedial and penal statutes.
“A statute penalty may be defined as a penalty fixed by statute as a punishment for the violation of some provision of law.” Bouv. L. Diet.
It is suggested in the application for rehearing that the 'principle of law in reference to this matter is correctly laid down by C. J. Shaw in the case of Reid v. Worthfield, 13 Pick., 101, where he says, in reference to remedial and penal statutes: — “The one is remedial and seeks indemnity against a party made liable by law to repair the loss he has occasioned; the other is penal* and seeks to punish the party for the violation of duty imposed by law.”
It is admitted, in the application of the petitioner, that this definition is in accord with that of a penal statute adopted by the court from Bouvier; but it is insisted that if the statute in question be tested by the definition given by C. J. Shaw, it must be held to be penal.
We are satisfied from an examination of the opinion delivered in this case, that the conclusion arrived at was based clearly upon the distinction between a penal and a remedial statute, as laid down in the case in 13 Pickering.
The opinion says: — “We conclude that while the failure of the clerk to enroll the cases was official delinquency, subjecting him to punishment, this proceeding is not for the purpose of punishing him, but simply to recover the money in his hands which, by his failure to perform the service, belongs not to him, *595 but to the county trustee for public purposes, — so that this proceeding is not one to recover a statute penalty.”
If we apply the definition of a remedial statute as given above, it is obvious that the motion by the county trustee is a proceeding which seeks indemnity against the clerk who was made liable by law to repair the loss he had occasioned.
The loss was occasioned by his appropriating to himself fees which, in consequence of his failure to enroll the cases, belonged to the county.
The entire reasoning of the opinion, as well as the conclusion arrived at, had in view the very distinction between remedial and penal statutes which is now conceded to be correct.
The other ground suggested for rehearing is, that, under the opinion,' the defendant is subjected to a State and county tax in each case, as if these motions were suits taxable by law, whereas it is insisted that motions are only suits so taxable when they are substitutes for the common law actions of case or debt.
It was so held in the case of the State v. Allison, 2 Swan, 373, and by the present court in the case of A. P. Curry, ante, p. 51.
Upon our construction of Code, sec. 3228, the clerk, having failed to enroll the cases, received and held the fees, not for himself, but for the trustee of the county. Under such circumstances, if the statute had prescribed no form of action, the trustee might have proceeded in case for the money. The motion given is, therefore, a substitute for this remedy, and is, therefore, a suit, subject to State and county tax.
*596 We are satisfied with our holding in the ease in regard to the taxation of the costs in those eases which have been enrolled by the clerk during the suspension of proceedings on the motions under the act of 1871.
These motions -were properly made, and the costs, including the State and county tax, accrued at that time, subject to the snccesful termination of the suits.
The Legislature gave the clerk twelve months during which to enroll the cases. ' The legal effect of this was to release the clerk from his liability to pay over to the county trustee the fees received in the cases enrolled.
This the Legislature had a right to do, because it was a liability to the State.
But we find nothing in the act from which it can be inferred that the Legislature intended to release the costs which were incident to the suits.